COMMONWEALTH vs. RICHARD A. STREET.

Suffolk.  December 8, 1982. — March 3, 1983.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Criminal,* Assistance of counsel, Argument by counsel.  *Constitutional Law,* Assistance of counsel.  *Insanity.*

Where defense counsel at the trial of indictments charging murder and assault with intent to murder admitted in his opening statement that the defendant had shot the victims but raised insanity as a defense, and where evidence introduced at the trial raised a substantial question as to the defendant's criminal responsibility, the defendant was deprived of his right to effective assistance of counsel by defense counsel's closing argument, in which he abandoned the defense of insanity to argue for a conviction of murder in the second degree based on the defendant's mental impairment.  [285-288]

INDICTMENTS found and returned in the Superior Court Department on February 11, 1981.

The cases were tried before *McGuire, J.*

*Carlo A. Obligato* for the defendant.

*Thomas J. Mundy, Jr.,* Assistant District Attorney (*Robert J. McKenna, Jr.,* Assistant District Attorney, with him) for the Commonwealth.

NOLAN, J.  The principal issue in this case is whether the defendant was deprived of effective assistance of counsel as a result of trial counsel's eleventh hour decision, in closing argument, to abandon an insanity defense to indictments charging murder in the first degree and assault with intent to murder, being armed with a dangerous weapon.  We hold that the defendant is entitled to a new trial.

The defendant was employed under the name Gary Kagan as a dishwasher at the C'est Si Bon restaurant on Arlington Street in Boston.  This restaurant was managed by the decedent, Mark Robinson, and John Aument.  The de-

fendant's employment at the restaurant terminated after approximately three months (September to November, 1980) when he failed to report to work. There was evidence that the defendant was displeased with the manner in which he was treated by his employer, although there was no evidence that he was, in fact, mistreated in any way during his employment.

On Thursday, December 11, 1980, at about midnight, Robinson and Aument left the restaurant, carrying the night's receipts in a New England Merchants Bank deposit bag inside a briefcase. They walked to Aument's Honda automobile, which was parked in a public alley adjacent to the restaurant, got into the car, and sat there waiting for the engire to warm up. Aument was on the driver's side; Robinson was on the passenger side. At this point, Aument heard a sound and saw that Robinson had been wounded in the neck. As Aument grabbed Robinson's hand, Aument was shot in the face under his right eye. He heard more shots and then saw that someone was leaning through the open passenger door across the front seat and was grabbing at Aument's coat, shaking him. The assailant wore a red ski mask which exposed only the assailant's eyes, nose, and mouth. Aument noticed that the assailant's eyes were very familiar to him. The assailant shot Aument, striking him in the right arm. Believing the assailant wanted money, Aument tossed the briefcase containing the deposit bag out the open passenger door. The assailant never took the money. Robinson died as a result of multiple gunshot wounds to the head and neck. Aument was wounded three times, twice in the head and once in the forearm, and he survived his injuries.

The defendant was indicted for murder in the first degree and for assault with intent to murder, being armed with a dangerous weapon. In his opening statement to the jury, defense counsel (not counsel on appeal) emphasized that the defendant admitted he committed the acts which resulted in Robinson's death and Aument's injuries, but that the defendant claimed he lacked criminal responsibility because of

insanity. We view defense counsel's cross-examination of prosecution witnesses as intended primarily to raise some doubt as to the defendant's sanity. At the close of the Commonwealth's evidence, the defendant moved for a required finding of not guilty by reason of insanity. After the judge denied the motion, the defendant produced a psychiatrist who testified in considerable detail that the defendant suffered from three mental diseases or defects: (1) schizophrenia, acute and chronic, paranoid type; (2) sociopathic personality; and (3) severe character disorder. In conformity with *Commonwealth* v. *McHoul*, 352 Mass. 544 (1967), the defendant's psychiatric witness testified that, as a result of these diseases or defects, the defendant was unable either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law. This expert witness based his opinion both on his own contact with the defendant and on the voluminous record of the defendant's psychiatric history, which included at least seven hospitalizations.[1] This witness had been acquainted with the defendant on a professional basis since 1969, although there was a period of years when the defendant and this psychiatrist did not meet professionally. There was considerable evidence that the defendant had a history of drug abuse.

On rebuttal, the Commonwealth presented a psychiatric expert who testified that the defendant was able to conform his conduct to the requirements of the law and that the defendant could appreciate the wrongfulness of his actions. Thus, we note that, with one exception[2], the conclusions of the two experts were diametrically opposed. We note, in addition, that the judge instructed the jury that they were allowed to disbelieve any expert testimony. See *Commonwealth* v. *Genius*, 387 Mass. 695, 698 (1982); *Commonwealth* v. *Laliberty*, 373 Mass. 238, 242 (1977).

---

[1] These hospital records were admitted in evidence.

[2] Both experts agreed that the defendant suffered from an antisocial personality disorder.

In closing argument, defense counsel indicated that the defendant admitted to causing Robinson's death and Aument's injuries. Defense counsel indicated that the defendant did the act with a plan and with intelligence.[3] Defense counsel then said, "I argue to you in this case that a fair verdict is not one of not guilty by reason of insanity. Quite frankly and in all candor, as an advocate for this man, the evidence is in there. He is crazy, Mr. Foreman. He is just not crazy enough under our law. He's crazy, but he planned the crime. He's sick, but he wore the mask. He's sick, but he hid from the police. He's crazy, but he ran away, but he tried not to get arrested. He's crazy, but not enough. So in this particular case I ask you to bring back a second-degree verdict. Why? Why? Because, based on all the evidence in this case, based on all the evidence that's before you, I argue to you that this shouldn't be a first-degree murder conviction." Further, he stated to the jury, "[T]he judge will tell you that you determine either he is guilty of first-degree murder, second-degree murder, or not guilty by reason of insanity. I have taken by reason of insanity away. I have told you there is not enough here."

The judge submitted the case to the jury with four possible verdicts on the murder indictment: (1) guilty of murder in the first degree; (2) guilty of murder in the second degree; (3) not guilty by reason of insanity; or (4) not guilty. The judge submitted the first degree murder indictment solely on the theory of deliberate premeditation. The judge also submitted to the jury the indictment charging assault with intent to murder. The judge instructed the jury on criminal responsibility under *McHoul* and mental impairment under *Commonwealth* v. *Gould*, 380 Mass. 672 (1980). The jury returned verdicts of guilty of murder in the first degree and of assault with intent to murder. The

---

[3] During defense counsel's closing argument the defendant twice protested. Once he said, "I am still on pro se status." Later, but still during counsel's argument, the defendant said, "Your Honor, if he is representing me, I can't listen to this any longer, because I can't agree with what he has said."

judge sentenced the defendant to a life term at the Massachusetts Correctional Institution at Walpole for the first degree murder conviction and to a twelve to fifteen year term at M.C.I. Walpole for the conviction of assault with intent to murder. The sentences were to be served consecutively. We reverse.

The standard we apply in determining whether the defendant was deprived of his right to effective assistance of counsel is well-settled in this Commonwealth. We must determine "whether there has been serious incompetency, inefficiency, or inattenion of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). Accord *Commonwealth* v. *Westmoreland, ante* 269 (1983); *Commonwealth* v. *Harris,* 387 Mass. 758, 761-762 (1982); *Commonwealth* v. *Levia,* 385 Mass. 345, 352 (1982). We will not reverse a conviction on this ground unless the defendant demonstrates "that better work might have accomplished something material for the defense." *Commonwealth* v. *Satterfield,* 373 Mass. 109, 115 (1977). Accord *Commonwealth* v. *Dalton,* 385 Mass. 190, 195 (1982). "When the arguably reasoned tactical or strategic judgments of a lawyer are called into question, we do not 'second guess competent lawyers working hard for defendants who turn on them when the jury happen to find their clients guilty.'" *Commonwealth* v. *Rondeau,* 378 Mass. 408, 413 (1979), quoting *Commonwealth* v. *Stone, 366* Mass. 506, 517 (1974). "Instead, we require that such judgments be 'manifestly unreasonable' (*Commonwealth* v. *Adams,* [374 Mass. 722, 728 (1978)]), and this typically means loss of 'an otherwise available, substantial ground of defence.'" *Commonwealth* v. *Rondeau, supra,* quoting *Commonwealth* v. *Saferian, supra.* Accord *Commonwealth* v. *Daigle,* 379 Mass. 541, 544 (1980). See also *Commonwealth* v. *Bernier,* 359 Mass. 13, 18 (1971) (effective

assistance of counsel does not mean successful assistance of counsel).

If believed, the evidence elicited by defense counsel, both during cross-examination of the Commonwealth's witnesses and during the defendant's case, raised a substantial question as to the defendant's criminal responsibility under *Mc-Houl*. The defendant's psychiatric witness unequivocally testified that the defendant suffered from three mental diseases: (1) schizophrenia, acute and chronic, paranoid type; (2) sociopathic personality; and (3) severe character disorder. This psychiatrist further testified that these diseases caused the defendant to be unable to appreciate the wrongfulness of his acts or to conform his conduct to the requirements of the law. Although, on cross-examination, this witness's testimony that the defendant could not appreciate the criminality of his acts was possibly weakened in the eyes of the jury, he never equivocated in this assertion or in his assertion that the defendant was unable to conform his conduct to the requirements of the law. Thus, the jury could have concluded reasonably that the defendant was legally insane at the time of the attacks on the decedent and Aument. Defense counsel, however, dismissed this theory in his closing argument to the jury. By informing the jury that the defendant had committed the acts resulting in Robinson's death and Aument's injuries, defense counsel, in effect, left the defendant with no defense to the charge of assault with intent to murder. As to the murder charge, the defendant was left with only a defense of mental impairment under *Gould* which, at best, would result in a conviction for murder in the second degree.

Moreover, we note that not only did defense counsel deprive the defendant of a substantial *McHoul* defense, but he also left him with a *Gould* defense which was exceptionally weak. In *Gould*, we held that the jury should consider the defendant's mental illness as it might bear on his capacity to premeditate deliberately a homicide. *Commonwealth v. Gould*, 380 Mass. 672, 680-683 (1980). Upon review of the evidence, we conclude that if the jury would not accept a

*McHoul* defense it would be primarily the result of their conclusion that the manner in which the defendant committed the acts belied the assertion that he did not appreciate the criminality of his actions or that he could not conform his conduct to the requirements of the law. The manner in which the defendant committed the acts of violence manifested deliberation, premeditation, calculation, an attempt to conceal his identity, and an attempt to avoid being seen by other people in the area of the scene of the crime. There was evidence from which the jury could conclude that the defendant lay in wait for the two men as they emerged from the restaurant and entered the car. There was further evidence from which the jury could infer that the defendant waited some number of minutes after Aument started the car engine before he began firing. We conclude that, at closing argument, defense counsel decided that this evidence had substantially undercut the weight of his psychiatric witness's testimony concerning criminal responsibility. Thus, he abandoned a *McHoul* defense and argued for a conviction of murder in the second degree based on a *Gould* defense, even though the same evidence which he concluded had undercut his expert witness's testimony under *McHoul* destroyed any assertion that the defendant was incapable of deliberately premeditating his actions.[4] In effect, defense counsel left his client denuded of a defense. Defense counsel should stay with his role as advocate and not attempt to play the role of juror. There was evidence from which the jury could have found that the defendant's mental condition satisfied the *McHoul* requirements. It is not controlling that the Commonwealth produced evidence of mental competency, because a jury question was presented.

This conduct was behavior which falls "measurably below that which might be expected from an ordinary fal-

---

[4] We also note that, although defense counsel was arguing that the defendant was incapable of deliberate premeditation, he also said to the jury: "He [the defendant] did it with a plan. He did it with intelligence. He did it calculatedly."

lible lawyer.". *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). We are satisfied that this conduct "likely deprived the defendant of an otherwise available, substantial ground of defence." *Id.* The defendant has likewise established that a better closing argument "might have accomplished something material for the defense." *Commonwealth* v. *Adams,* 374 Mass. 722, 727 (1978), quoting *Commonwealth* v. *Satterfield,* 373 Mass. 109, 115 (1977). Thus, we conclude that the defendant was deprived of effective assistance of counsel.[5] Accordingly, we reverse the judgments of the Superior Court, set aside the verdicts, and remand the case for a new trial.[6]

*So ordered.*

---

[5] See generally *Commonwealth* v. *Westmoreland, supra* at 271-275 (on similar facts we held defendant was deprived of effective assistance of counsel).

[6] We perceive no problem in the admissibility of statements made by the defendant to the psychiatrist who examined him under G. L. c. 123, § 15. Unlike the situation in *Commonwealth* v. *Callahan,* 386 Mass. 784 (1982), the statement in the case before us was admissible on the issue of his mental condition, and did not "constitute[ ] a confession of guilt of the crime charged." G. L. c. 233, § 23B, as amended by St. 1970, c. 888, § 27. See *Commonwealth* v. *Callahan, supra* at 788 (broad definition of confession).