## COMMONWEALTH vs. JOSEPH N. CALLAHAN.

Suffolk.  October 5, 1987. — February 8, 1988.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Homicide. Insanity. Malice. Constitutional Law*, Admissions and confessions, Assistance of counsel, Equal protection of laws, Establishment of religion. *Practice, Criminal*, Instructions to jury. *Jury and Jurors*.

At the hearing on a motion to suppress a defendant's statement from evidence at his trial for murder, the evidence found credible by the judge supported his determinations that the defendant was not in custody when he made the statement to police at the scene of the crime, and that the statement was voluntarily and freely made and was the product of a rational mind. [629-631]

In a murder case, no error arose from the judge's refusal to give a requested instruction on voluntary manslaughter, where the evidence did not require such an instruction. [632]

At a murder trial in which the evidence showed that the victim was shot three times in the head and that the bloodied murder weapon had been wrapped in a towel apparently to muffle the sound, no substantial risk of a miscarriage of justice was created by the judge's not instructing the jury on involuntary manslaughter, inasmuch as no jury could have rationally concluded that the shooting was unintentional, wanton, or reckless. [632-633]

At a murder trial there was no improper shifting of the Commonwealth's burden of proof on the issues of premeditation and malice in the judge's instructions to the jury, which stated the law correctly. [633]

At a murder trial, there was no likelihood of a miscarriage of justice in the judge's use of the words "responsibility" and "insanity" in portions of his charge to the jury where his specific and repeated instructions on criminal responsibility were clearly correct under the principles of *Commonwealth* v. *McHoul*, 352 Mass. 544 (1967), and where, in their entirety, the instructions could not have confused the jury. [633-634]

The record of a criminal trial did not support the defendant's contentions on appeal that he was deprived of the effective assistance of counsel, either by his attorney's allegedly inadequate argument of the defense of lack of criminal responsibility or by his allegedly conceding premeditation and malice. [634-636]

There was no merit to the claims of a defendant convicted of first degree murder, raised under G. L. c. 278, § 33E, that he should be furnished

funds to conduct a study to prove that the juror notification form prejudiced jurors against the defense of lack of criminal responsibility [636-637], or that G. L. c. 265, § 2, punishing persons convicted of murder in the first degree, was not gender neutral [637], or that certain words in the indictment and oaths constituted an establishment of religion [637-638].

INDICTMENT found and returned in the Superior Court on April 12, 1976.

After review by this court, 386 Mass. 784 (1982), the case was retried before *Herbert F. Travers, Jr.*, J.

*Fred Hewitt Smith* (*Cynthia Smith* with him) for the defendant.

*Philip T. Beauchesne*, Assistant District Attorney (*Margaret Steen Melville*, Assistant District Attorney, with him) for the Commonwealth.

ABRAMS, J. Convicted of murder in the first degree,[1] the defendant, Joseph N. Callahan, appeals, alleging error in the denial of his motion to suppress statements he made to the police, error in the instructions to the jurors,[2] and ineffective assistance of counsel. In addition, pursuant to G. L. c. 278, § 33E (1986 ed.), he alleges that there is a substantial likelihood of a miscarriage of justice because (a) the juror selection process is prejudicial; (b) his sentence violates the equal protection principles of the Fourteenth Amendment to the Constitution of the United States and art. 10 of the Massachusetts Declaration of Rights; and (c) the practices and procedures of the Commonwealth violate the establishment of religion clause of the First Amendment to the Constitution of the United States. Finally, the defendant asserts that the cumulative effect of all the errors he argues creates a substantial likelihood of a miscar-

---

[1] The defendant has been convicted of murder in the first degree three times for the same offense. The first two convictions were reversed by this court. *Commonwealth* v. *Callahan*, 380 Mass. 821 (1980). *Commonwealth* v. *Callahan*, 386 Mass. 784 (1982).

[2] The defendant challenges several instructions for the first time on appeal. The standard of review of these instructions is whether they created a substantial likelihood of a miscarriage of justice. See *infra* at 631.

riage of justice and that we should either order the entry of a verdict of a lesser degree of guilt or grant a new trial. We affirm the conviction. We conclude that there is no reason to exercise our power under G. L. c. 278, § 33E, to order a new trial or entry of a verdict of a lesser degree of guilt.

1. *Denial of the motion to suppress.* The defendant alleges error in the denial of his motion to suppress a statement made to the police officers at the scene. He claims he was subjected to "custodial interrogation" prior to being given the warnings required by *Miranda* v. *Arizona,* 384 U.S. 436 (1966). He also alleges that the judge's conclusion that the statement was voluntary is erroneous. We conclude there is no merit to either contention.

After hearing, the judge made the following findings of fact. As a result of a radio call, two police officers went to a residential structure at 64 Danny Road, Hyde Park. The defendant was standing in the doorway at that address. When he saw the officers, the defendant said, "Follow me." As the three men were proceeding to an upper floor in the building, the defendant said, "She's shot. You'd better get an ambulance." The three men then entered a bedroom. The victim was on the bed, and "from her appearance, [one of the officers] thought she might well be dead." After checking the victim's vital signs, the officer asked, "What happened?" The defendant replied, "She was going to throw me out, and so I shot her." The defendant then was arrested and the warnings required by the *Miranda* case were recited. The defendant acknowledged his apparent understanding of each of the warnings.[3]

The judge found that the defendant's conduct was appropriate, and that he was responsive to questions and to the circumstances in which he found himself. He appeared calm and rational. He did not appear "deeply depressed in a lay sense of that phrase." The judge found that the defendant appeared sober with reference to the use of alcohol or chemical agents. The judge determined that the defendant's conduct had the

[3] Thereafter a general conversation took place in which the defendant discussed his education, which was extensive. The admission of this conversation is not challenged on appeal.

appearance of rationality. He concluded that the interrogation was noncustodial and that the statement was freely and voluntarily made.

Miranda warnings are only necessary for "custodial interrogations." *Commonwealth* v. *Bryant*, 390 Mass. 729, 736 (1984). The judge could conclude that the defendant was not in custody when the police asked, "What happened?" This simple question, posed to the defendant by the police on discovery of a dead body, "was a proper preliminary inquiry not requiring Miranda warnings." *Commonwealth* v. *Podlaski*, 377 Mass. 339, 343 (1979). It was directed to discovering generally what the defendant knew about the circumstances of the victim's death. See *id.*; *Commonwealth* v. *Borodine*, 371 Mass. 1, 4-5 (1976), cert. denied, 429 U.S. 1049 (1977); *Commonwealth* v. *Doyle*, 12 Mass. App. Ct. 786, 793-794 (1981). Suspicion had not focused on the defendant, and the questioning was neither aggressive nor overbearing. *Commonwealth* v. *Podlaski, supra.* See *Commonwealth* v. *Bryant, supra* at 738-739. The fact that the police probably would not have allowed the defendant to leave until he talked to them does not by itself make the situation custodial. See *id.*; *Commonwealth* v. *Podlaski, supra.* Thus, there was no error in the judge's determination that the defendant was not in custody when the police asked him, "What happened?"[4]

The evidence found credible by the judge also supports his conclusion that the defendant's statement was voluntary and the product of a rational mind. Testimony was given that the defendant appeared calm and rational, responsive to his surroundings and to the officers, and did not appear to be under the influence of alcohol or chemical agents. "We will not lightly disturb a judge's determination which is supported by

---

[4] The defendant suggests that the judge's findings are unreliable because of his comment that, prior to the defendant's statement, "the police officers had no reason to believe that in fact a crime had been committed." While we agree that this comment may overstate the situation, the judge also found "it was not apparent [prior to the statement] that the defendant had engaged in any criminal activity." The latter finding clearly is warranted and supports the conclusion that the question "What happened?" was asked in a noncustodial setting.

evidence in the record and which is also based on an assessment of the witnesses before him." *Commonwealth* v. *Wilborne*, 382 Mass. 241, 252 (1981). See *Commonwealth* v. *Perry*, 389 Mass. 464, 466 (1983); *Commonwealth* v. *Sellon*, 380 Mass. 220, 226 (1980). There is nothing in this record which would require us to disturb the judge's subsidiary findings and his ultimate conclusions.

The defendant contends that the judge was required to reconsider psychiatric testimony, offered later in the trial, in determining whether the admission was the product of a rational mind. We disagree. At the hearing, the judge's attention was drawn to transcripts of testimony given by psychiatrists at the defendant's prior two trials. At least two of these psychiatrists were the same experts who later testified in this trial. Based on all the evidence presented at the hearing, the judge could determine that the defendant's admission was freely and voluntarily made and was the product of a rational intellect.[5]

2. *Jury instructions.* The defendant assigns four errors in the jury instructions: (a) failure to give a requested instruction on voluntary manslaughter; (b) failure to give an instruction on involuntary manslaughter; (c) shift of the burden of proof on the issues of premeditation and malice; and (d) use of the words "insanity" and "responsibility" with regard to the *McHoul* test of lack of substantial capacity. In assessing the charge, we are mindful that "the adequacy of instructions must be determined in light of their over-all impact on the jury." *Commonwealth* v. *Sellon*, 380 Mass. 220, 231-232 (1980). Moreover, because the requested instruction on voluntary manslaughter was the only claim raised at trial, we review the other three pursuant to G. L. c. 278, § 33E, solely to determine whether there was a likelihood of a miscarriage of justice. E.g., *Commonwealth* v. *Prendergast*, 385 Mass. 625, 634 (1982). After reviewing the charge as a whole, we conclude

---

[5] Under the humane practice, see, e.g., *Commonwealth* v. *Marshall*, 338 Mass. 460, 461-462 (1959), the judge properly submitted to the jury the question of the effect of the defendant's mental state on the voluntariness of his admission. The jury, therefore, could consider what weight to give to the psychiatric testimony offered at trial.

that no instruction on voluntary manslaughter was required, and that the other instructions do not create a substantial likelihood of a miscarriage of justice.

a. *Voluntary manslaughter*. The defendant requested an instruction that "[a] person is guilty of voluntary manslaughter if he commits the act of killing another by reason of a sudden transport of passion or heat of blood which is provoked by a mental disease or mental defect; alcohol or drugs; or any combination of mental disease, mental defect, alcohol and/or [*sic*] drugs." The instruction does not accurately reflect the law in Massachusetts. "Voluntary manslaughter is 'a killing from a sudden transport of passion or heat of blood, upon a reasonable provocation and without malice, or upon sudden combat.'" *Commonwealth* v. *Zukoski*, 370 Mass. 23, 28 (1976), quoting *Commonwealth* v. *Soaris*, 275 Mass. 291, 299 (1931). "Insults and quarreling alone cannot provide a reasonable provocation." *Zukoski*, *supra* at 28. The evidence reveals that the defendant and the victim argued over money the previous afternoon. The defendant admitted to the police, "She was going to throw me out, and so I shot her." This evidence does not support a claim that there was reasonable provocation for killing the victim. No charge to the jury on voluntary manslaughter was required.

b. *Involuntary manslaughter*. No instruction on involuntary manslaughter was warranted because no jury rationally could have found that the shooting was unintentional, wanton, or reckless. See, e.g., *Commonwealth* v. *Walden*, 380 Mass. 724, 730 (1980); *Commonwealth* v. *Santo*, 375 Mass. 299, 306 (1978); *Commonwealth* v. *Vanderpool*, 367 Mass. 743, 747 (1975). The victim was shot three times in the head with a gun found in the bedroom. The gun barrel was bloodied, and a hair was caught between the barrel and the slide. The gun was wrapped in a towel, apparently to muffle the noise of the discharge.[6] Powder burns, gunshot holes, and human hairs were found in the towel. On no view of the evidence could a jury find that the three bullets were discharged into

---

[6] The victim's daughter was asleep in the house and was not awakened by gunshots.

the victim's head unintentionally.[7] See *Commonwealth* v. *Le-Blanc*, 373 Mass. 478, 491 (1977).

c. *Burden of proof.* The judge repeatedly instructed the jury that the Commonwealth bore the burden of proving every element of the crime of murder in the first degree beyond a reasonable doubt. Contrary to the defendant's argument, the judge's instruction that premeditation "may occur within a few seconds" was not improper. See *Commonwealth* v. *Garabedian*, 399 Mass. 304, 312 (1987), and cases cited. The judge properly qualified this statement with instructions that deliberate premeditation "excludes action which is taken so spontaneously that there is no time to think," and that the jury could consider evidence of alcohol usage, as well as mental illness, in determining whether the Commonwealth proved the defendant was capable of deliberate premeditation. See *Commonwealth* v. *Gould*, 380 Mass. 672, 680-683 (1980).

The judge's instruction on malice also was correct. The judge told the jurors that "malice may be inferred from the intentional use of a deadly weapon, such as a pistol, but you do not have to, of course, make such an inference. Whether you feel that such an inference [in the] particular circumstances is reasonable and that you wish to draw it, is your conclusion and your prerogative, and nobody else's." See *Commonwealth* v. *Albert*, 391 Mass. 853, 859-861 (1984); *Commonwealth* v. *Stillwell*, 387 Mass. 730, 733 (1982). See also *Commonwealth* v. *Campbell*, 375 Mass. 308, 312 (1978), and cases cited. The burden of proof was not shifted.

d. *McHoul defense.* There is no dispute that the judge specifically and repeatedly instructed the jurors that "[a] person is not responsible for criminal conduct if, at the time of such conduct, as a result of mental disease or defect, he lacks substantial capacity either to appreciate the criminality or wrong-

---

[7] The defendant argues that the presence of a fourth cartridge in the bedroom is evidence that the defendant engaged in a wanton shooting spree. We disagree. The fourth casing indicates only that the police failed to find the fourth bullet; it does not detract at all from the clear evidence that the defendant shot the victim in the head at extremely close range.

fulness of his conduct, or to conform his conduct to the require-
ments of law." *Commonwealth* v. *McHoul,* 352 Mass. 544,
546-547 (1967). Such instructions clearly were correct. *Id.*
The defendant concedes that these instructions were correct,
but objects to the judge's use of the words "responsibility" and
"insanity" in other portions of the charge; he suggests that the
occasional use of these words confused the jury as to the test
for criminal responsibility under *McHoul.*[8] After reviewing the
instructions in their entirety, we conclude that reasonable jurors
only could have understood the judge's charge as a whole to
require the Commonwealth to prove beyond a reasonable doubt
that the defendant possessed substantial capacity as defined in
*McHoul.* See *Commonwealth* v. *Moreira,* 385 Mass. 792, 796
(1982). Thus, there was no likelihood of a miscarriage of
justice.[9]

3. *Ineffective assistance of counsel.* The defendant chal-
lenges two essential portions of trial counsel's closing argu-
ment, alleging that counsel failed to argue adequately the
*McHoul* defense and conceded premeditation and malice. "In
assessing a claim of ineffective assistance of counsel, we must
appraise 'the specific circumstances of the given case to see
whether there has been serious incompetency, inefficiency, or
inattention of counsel — behavior of counsel falling measurably

---

[8] The defendant also objects to occasional use by the prosecutor and trial
counsel of the same terms. There is no merit in this objection. The correct
*McHoul* standard was stated several times during the trial. Any possible
misunderstanding was corrected adequately by the judge's concededly cor-
rect instructions on the law. See *Commonwealth* v. *Szczuka,* 391 Mass.
666, 673-674 (1984); *Commonwealth* v. *Atkins,* 386 Mass. 593, 605-606
(1982).

[9] The defendant objects on appeal that the judge altered the *McHoul* test
by asking prospective jurors before trial whether they could make an impar-
tial decision "[i]f criminal responsibility, or the lack of it, becomes an issue
in this trial," and whether they could consider impartially the testimony of
psychiatrists. Having requested these questions, the defendant cannot com-
plain on appeal that he was prejudiced by them. See *Lannon* v. *Common-
wealth,* 379 Mass. 786, 792-793 (1980). Nevertheless, we conclude that
the questions were proper; they were "directed at discovering bias against
the defense of lack of criminal responsibility." *Commonwealth* v. *Prender-
gast,* 385 Mass. 625, 628 (1982).

below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence.' *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974)." (Footnote omitted.) *Commonwealth* v. *Triplett*, 398 Mass. 561, 568 (1986). "When the arguably reasoned tactical or strategic judgments of a lawyer are called into question, we do not 'second guess competent lawyers working hard for defendants who turn on them when the jury happen to find their clients guilty.' *Commonwealth* v. *Stone*, 366 Mass. 506, 517 (1974). Instead, we require that such judgments be 'manifestly unreasonable' (*Commonwealth* v. *Adams*, [374 Mass. 722, 728 (1978)]), and this typically means loss of 'an otherwise available, substantial ground of defence.'" *Commonwealth* v. *Rondeau*, 378 Mass. 408, 413 (1979). See *Commonwealth* v. *Fuller*, 394 Mass. 251, 256 (1985).[10]

Trial counsel in this case forcefully presented the theory that the defendant was unable to control his conduct on the night of the killing and thus was not responsible for his actions. *Commonwealth* v. *McHoul, supra.* Counsel recounted the evidence of the defendant's long history of manic-depressive mental illness, his medication, his consumption of alcohol which exacerbates his condition, the stress he was under, his history of suicide attempts, and the fact that he neither fled nor tried to conceal the killing. Counsel marshaled the facts in favor of the defense of lack of substantial capacity and conveyed clearly to the jury the essential factors to be considered under *McHoul*.[11] Counsel is not required, as the defendant suggests,

---

[10] The defendant bases his claim of ineffective assistance on Federal, as well as State, constitutional grounds. See *Strickland* v. *Washington*, 466 U.S. 668 (1984); *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). We have noted that, "if the *Saferian* test is met, the Federal test is necessarily met as well." *Commonwealth* v. *Fuller*, 394 Mass. 251, 256 n.3 (1985). While "leav[ing] open the question of what differences, if any, exist between the two standards," *id.*, we conclude that the defendant's claim fails irrespective of the standard employed.

[11] We disagree with the defendant's assertion that counsel was ineffective for failing to discuss the "breakthrough phenomenon" in manic-depressive

to use the specific language of the *McHoul* test. The decision to argue the facts supporting the *McHoul* defense was not "manifestly unreasonable."[12] *Commonwealth* v. *Rondeau, supra. Commonwealth* v. *Adams, supra.* This clearly is not a case in which counsel "withdr[ew] from the jury . . . consideration of the issue of criminal responsibility," *Commonwealth* v. *Westmoreland*, 388 Mass. 269, 273 (1983), or "left his client denuded of [that] defense." *Commonwealth* v. *Street*, 388 Mass. 281, 287 (1983).

The record also provides no support for the defendant's contention that trial counsel conceded premeditation and malice. Counsel argued to the jury that to find the defendant guilty of murder in the first degree they had to find deliberate premeditation and malice aforethought. He contended that there was insufficient evidence of first degree murder, and urged the jury to return a verdict of not guilty by reason of insanity. The thrust of the defendant's complaint is that counsel did not argue sufficiently the difference between murder in the first degree and murder in the second degree. Counsel's decision to marshal the evidence supporting the *McHoul* defense and leave the discussion of the law to the judge was not "manifestly unreasonable," and did not "denude" the defendant of a defense. See *Commonwealth* v. *Street, supra* at 284; *Commonwealth* v. *Westmoreland, supra* at 272-274.[13]

---

illness. Counsel clearly conveyed a theory that the defendant was out of control at the time of the killing. The facts regarding the defendant's mental illness were fully before the jury. "Thus, it is not clear that 'better work might have acomplished something material for the defense.'" *Commonwealth* v. *Bryant*, 390 Mass. 729, 752 (1984). *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977). Nor, as the defendant asserts, was counsel ineffective for failing to introduce evidence that the defendant allegedly did not know of his own divorce. There is no evidence that the defendant did not know he was divorced, that such lack of knowledge indicated delusion or that trial counsel was aware of any such lack of knowledge. Accord *Commonwealth* v. *Brady*, 380 Mass. 44, 55-56 (1980).

[12] The defendant contends that counsel's comment that the defendant "brooded" on the evening of the killing was prejudicial because it implied rational contemplation of the crime. We disagree. Read in context, counsel's comment used that fact to emphasize how upset, confused, and perhaps suicidal the defendant was.

[13] We disagree with the defendant's contention that counsel was ineffective for failing to comment in closing argument on the defendant's admission

4. *Claims Pursuant to G. L. c. 278, § 33E.*

a. *Jury selection.* The defendant alleges that the notice of juror qualification requirements, mailed to prospective jurors pursuant to G. L. c. 234A (1986 ed.), prejudiced the sitting jurors because the notification form (i) defines mental disability from jury duty differently from the *McHoul* test; (ii) disqualifies from jury duty defendants in criminal cases, persons in custody, and persons suffering from "mental disability"; and (iii) allows accredited Christian Science practitioners to verify a person's physical or mental disability from jury duty. From these facts, the defendant concludes that the jurors who heard the case may have been unable to follow the judge's concededly correct instructions on the *McHoul* defense. "[T]he notion that such a notice to potential jurors would so prejudice them against [a defense of lack of criminal responsibility] . . . is unfounded." *Commonwealth* v. *Acen,* 396 Mass. 472, 482, appeal dismissed, 476 U.S. 1155 (1986).

After filing this appeal, the defendant, who is indigent, requested funds to conduct a study to prove that the notification form prejudices jurors against the *McHoul* defense. The single justice denied the request as untimely, citing *Commonwealth* v. *Pope,* 392 Mass. 493, 498 (1984). We agree that the defendant's request comes too late. Even a timely request would not have entitled the defendant to these funds, because the proposed study is not "reasonably necessary to assure the applicant as effective a . . . defense or appeal as he would have if he were financially able to pay." G. L. c. 261, § 27C (4) (1986 ed.). See *Commonwealth* v. *Lockley,* 381 Mass. 156, 160 (1980). The defendant's request is totally lacking in merit. See *Commonwealth* v. *Acen, supra.*

b. *Equal protection.* There is no record support for the defendant's assertion that men convicted of murder in the first degree receive longer sentences than women convicted of murder in the first degree. The sentence for this crime is life imprisonment without parole. G. L. c. 265, § 2 (1986 ed.).

---

to the police. Counsel presented a theory that the defendant was out of control on the night of the killing, and it was a reasonable tactical decision not to highlight the defendant's damaging statement in reconstructing the scene. A decision not to "fight the facts" is a reasonable tactical decision.

This sentence is mandatory. The statute is gender neutral. There is no violation of the equal protection clause of the Fourteenth Amendment, or art. 1 or art. 10 of the Massachusetts Declaration of Rights.

c. *Establishment of religion.* The defendant contends that the words "in the year of our Lord" in the indictment form and the words "so help me God" in the oaths administered to the jurors and witnesses established the Christian religion at his trial in violation of the First Amendment to the United States Constitution, the Massachusetts Constitution, and the Massachusetts Declaration of Rights. Nothing in the record remotely suggests any prejudice, much less a substantial likelihood of a miscarriage of justice. Even if the defendant has standing,[14] his claim lacks merit. The words "in the year of our Lord" in the indictment form and "so help me God" in the oaths do not constitute an establishment of religion. They are simply two examples of many permissible, secular "references to the Almighty that run through our laws, our public rituals, [and] our ceremonies." *Colo* v. *Treasurer & Receiver Gen.*, 378 Mass. 550, 561 (1979), quoting *Zorach* v. *Clauson*, 343 U.S. 306, 312-313 (1952). *Lynch* v. *Donnelly*, 465 U.S. 668, 675-677 (1984).

5. *Cumulative effect.* The defendant asserts that the cumulative effect of his claims of error requires a conclusion that a miscarriage of justice occurred. We do not agree. We have reviewed the record and conclude that there is no reason for us to exercise our power under G. L. c. 278, § 33E, to order a new trial or entry of a verdict of a lesser degree of guilt.

*Judgment affirmed.*

---

[14] Without deciding the issue, we question seriously whether the defendant has standing. He does not allege that he is non-Christian. He also fails to allege any "injury in fact" which is "fairly traceable" to the alleged constitutional violation. *Valley Forge Christian College* v. *Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982). "The injury alleged must be . . . 'distinct and palpable' . . . and not 'abstract' or 'conjectural' or 'hypothetical' . . ." (citations omitted). *Allen* v. *Wright*, 468 U.S. 737, 751 (1984). The defendant suggests only that certain passages in the Christian Bible might be construed as inconsistent with the law as expressed in *McHoul*, and asserts that the jurors therefore may have been prejudiced against the *McHoul* defense. This theory of prejudice is entirely conjectural. It finds no support in the record or in logic.