COMMONWEALTH vs. EDWARD STANLEY LYKUS.

Bristol. September 13, 1989. - November 20, 1989.

Present: LIACOS, C.J., WILKINS, NOLAN, & LYNCH, JJ.

*Constitutional Law*, Assistance of counsel, Search and seizure, Privacy.
    *Practice, Criminal*, Assistance of counsel, New trial, Instructions to
    jury, Sentence, Judicial discretion, Capital case. *Eavesdropping. Search
    and Seizure*, Electronic surveillance, Expectation of privacy. *Privacy.
    Homicide. Due Process of Law*, Presumption, Burden of proof.

In a murder case, where the judge correctly ruled that the police, in 1972,
    had lawfully intercepted certain telephone communications pursuant to
    G. L. c. 272, § 99, defense counsel's failure to have filed any motion to
    suppress the wiretap recordings did not deprive the defendant of an
    "otherwise available, substantial ground of defence" and the defendant
    therefore was not denied the effective assistance of counsel. [138-143]
At a murder trial the judge created no impermissible presumption in re-
    gard to the time of death stated on the death certificate by his proper
    instructions on the effect and limits of prima facie evidence. [143-144]
A defendant deprived of effective assistance of counsel at his sentencing
    was entitled to a new sentencing hearing. [144-146]

INDICTMENTS found and returned in the Superior Court,
two on February 6, 1973, and one on June 8, 1973.

The cases were tried before *James P. McGuire*, J., and a
motion for a new trial, filed on July 11, 1986, was heard by
him.

*Joseph J. Balliro* (*Joseph J. Balliro, Jr.*, with him) for the
defendant.

*Philip A. Rollins*, District Attorney (*Lance Garth*, Assis-
tant District Attorney, with him) for the Commonwealth.

LIACOS, C.J. The defendant, Edward Stanley Lykus, ap-
peals from the denial of his motion for a new trial. The de-
fendant had been convicted in 1973 for extortion, kidnap-
ping, and murder in the first degree. On appeal, the

convictions were affirmed. *Commonwealth v. Lykus,* 367 Mass. 191 (1975). Subsequently, the defendant filed a motion for a new trial. The motion was denied, and the defendant filed a motion for allowance of appeal from the denial of his motion for a new trial with a single justice of this court. G. L. c. 278, § 33E (1988 ed.). See *Leaster v. Commonwealth,* 385 Mass. 547 (1982). See also *Dickerson v. Commonwealth,* 396 Mass. 740 (1986). The single justice allowed the defendant's motion to appeal to the full court as to three issues: (1) ineffective assistance of counsel at the original trial through defense counsel's failure to move to suppress evidence obtained by a wiretap; (2) improper instruction by the trial judge regarding the time of death of the victim; and (3) ineffective assistance of counsel at the defendant's sentencing hearing. We affirm the denial of the motion for a new trial, but remand the case for resentencing of the defendant.

We summarize the evidence on which the jury could have based their verdicts.[1] On November 2, 1972, the victim, Paul Cavalieri, left his home in North Attleboro. Two days later, the victim's mother received a telephone call in which a whispered voice said, "You will receive instructions." In response to this call, Mrs. Cavalieri telephoned the North Attleborough police department. Three days later, the victim's father, Anthony Cavalieri, received a handwritten ransom note, which read: "Tony, we have your son Paul. We want $50,000 in small bills in a brown bag. Don't tell the cops about this because we will be watching very closely and if there are any mess-ups, your son is dead. Come alone with the money and drop it off Tuesday night at 10:00 p.m. at the stop sign off Chestnut Street and Oak Street in back of the pine tree right near it. Your son will be released if there are no mess-ups, because he has never seen us before. You'd better heed to what we say. We know you've notified the police

---

[1]A more complete statement of the evidence is found in *Commonwealth v. Lykus, supra.*

by now so we will be taking precautions. Do as we say and everything will be all right. This is no joke."

The Cavalieris again telephoned the police, and a North Attleborough police detective and an agent of the Federal Bureau of Investigation (F.B.I.) came to the Cavalieri home later that day. At that time, Mr. Cavalieri gave the F.B.I. agent permission to connect a recording device to the Cavalieris' telephone. This device recorded four calls relative to the kidnapping over the next two days.

As a result of these telephone calls, the Cavalieris, in cooperation with the North Attleborough police department and the F.B.I., left the requested ransom money at a certain location. A white male in a station wagon picked up the money. Further investigation by the police led to the arrest of the defendant. He denied having called or written to the Cavalieris and claimed that someone had paid him to pick up the ransom money. On April 12, 1973, the body of Paul Cavalieri was found.

The police took several exemplars of the defendant's voice and sent the tapes of the recorded telephone calls (recordings) and the exemplars to Lt. Ernest Nash of the voice identification unit of the Michigan State police. Using spectrographic voice analysis, Lt. Nash concluded that the defendant's voice was the same voice as that on the recordings. After an extensive voir dire hearing, the judge ruled that Lt. Nash's expert opinions were admissible.[2]

The Commonwealth introduced in evidence one of the recordings, which was played for witnesses in open court, and called eight witnesses to identify the voice on the tape. Seven of these witnesses identified the voice as that of the defendant.[3] The Commonwealth also called the medical examiner

---

[2]The judge's ruling that spectrographic voice analysis had been shown to be sufficiently reliable to be admissible in evidence was upheld by this court in *Commonwealth* v. *Lykus, supra.*

[3]During the course of the trial, defense counsel filed the following motions relative to the recorded conversations: (1) motion to suppress the in-court voice identifications by the seven witnesses; (2) motion to suppress the method of voice identification as offered by the Commonwealth's ex-

for Bristol County, who had performed the autopsy on the victim. The medical examiner testified that, in his opinion, the time of death was November 2, 1972, but that death could have occurred a day, a week, or even a month later.

The jury found the defendant guilty of the kidnapping and murder in the first degree of Paul Cavalieri, and extortion from the victim's father. At the sentencing hearing, the trial judge allowed defense counsel the opportunity to be heard. Defense counsel addressed the court as follows: "As you well know, it has been a long trial; you have heard all of the facts, Your Honor. Just for the record, I would like to say that Mr. Lykus is twenty years old, is presently divorced, his wife has filed an action for divorce. He has three brothers and two sisters, and his father is dead. His mother is still living. Thank you, very much." After these comments, the prosecutor requested an "on and after" sentence on the extortion and kidnapping indictments. The judge sentenced the defendant to a term of from ten to fifteen years for extortion, to commence on and after concurrent life sentences for murder and kidnapping.

1. *Ineffective assistance of counsel at trial.* The defendant claims that the motion judge erred in ruling that he was not denied the effective assistance of counsel at trial. We disagree.

Both art. 12 of the Declaration of Rights of the Massachusetts Constitution and the Sixth Amendment to the United States Constitution guarantee a right to the effective assistance of counsel. *Strickland* v. *Washington*, 466 U.S. 668 (1984). *Commonwealth* v. *Hurley*, 391 Mass. 76 (1984). This right has been recognized as essential to the protection of the fundamental right to a trial. *Id.* We have held that the right to effective assistance of counsel, afforded a defendant by art. 12, "provide[s] greater safeguards than the Bill of Rights of the United States Constitution." *Commonwealth* v.

pert witnesses; (3) motion to obtain a voice print expert; and (4) motion to suppress the spectrograph produced by spectrographic voice analysis. All but the third motion were denied.

*Hodge*, 386 Mass. 165, 169 (1982). Thus, if the Massachusetts standard for effective assistance of counsel is met, "the Federal test is necessarily met as well." *Commonwealth* v. *Fuller*, 394 Mass. 251, 256 n.3 (1985).

When faced with a claim of ineffective assistance of counsel, we have stated that the court must undertake "a discerning examination and appraisal of the specific circumstances of the given case to see whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

The defendant claims that his counsel's failure to file a motion to suppress the recordings of the telephone conversations denied him effective assistance of counsel.[4] Although he concedes that his counsel performed admirably in most respects, the defendant claims that the failure to move to suppress was inexcusable in light of the crucial role the recording admitted in evidence played in the Commonwealth's case. Certainly, the record demonstrates that the significance of the recording was not lost on either the prosecution or defense counsel. The Commonwealth presented at least ten witnesses in an effort to link the defendant to the recording, while defense counsel filed four motions designed to nullify or lessen the impact the recording might have on the jury.

The judge, in denying the defendant's claim of ineffective assistance of counsel, characterized the failure to file a motion to suppress as "a reasonable strategic choice." A defendant is not deprived of the effective assistance of counsel simply because defense counsel's reasonable strategic choices fail to produce a verdict of not guilty. *Commonwealth* v. *Callahan*, 401 Mass. 627, 635-636 (1988). However, these choices are not entitled to deference unless they are "arguably rea-

---

[4]Only one of these recordings was admitted in evidence.

soned tactical or strategic judgments." *Id.*, quoting *Commonwealth* v. *Stone*, 366 Mass. 506, 517 (1974). We can think of no "reasonable strategic choice" which would warrant the failure to file a motion to suppress in the circumstances of this case.[5]

This does not end our inquiry. We must consider the correctness of the judge's ruling that, at the time of the kidnapping, the Massachusetts wiretap statute (G. L. c. 272, § 99) allowed the tap on the Cavalieris' telephone.[6] If the wiretap was legal, any motion to suppress recordings obtained with the wiretap would ultimately have failed, and the defendant would not be deprived of "an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian, supra* at 96.

At the time of the kidnapping, G. L. c. 272, § 99, as appearing in St. 1968, c. 738, § 1, provided that the use of wiretaps and other modern electronic surveillance devices to secretly intercept the contents of any wire or oral communication was prohibited unless otherwise exempted from the scope of the statute.[7] The provisions of G. L. c. 272, § 99, "[were] designed to ensure that unjustified and overly broad intrusions on rights of privacy [were] avoided." *Common-*

---

[5]While the defendant did present the testimony of his own expert witness as to the accuracy of the recording and the reliability of spectrographic voice analysis, this fact does not lead to a conclusion that the failure to move to suppress the recording was a "reasonable strategic choice." Given the crucial role the recording played in the Commonwealth's case, and the judge's denial of the defendant's motions regarding the recording, see note 3, *supra*, defense counsel had no option but to present his own expert witness.

[6]In *Commonwealth* v. *Blood*, 400 Mass. 61 (1987), we held that art. 14 of the Declaration of Rights of the Massachusetts Constitution requires suppression of evidence procured by warrantless wiretaps pursuant to one party's consent. Although the present case involves a warrantless wiretap, this holding does not affect the present case, as application of the rule in *Blood* was limited to cases pending on direct appeal at that time. *Id.* at 77 n.18. We intimate no view that the principles enunciated in *Blood* would be applicable to the facts of this case.

[7]General Laws c. 272, § 99 B 3, generally prohibits the use of "intercepting devices" which are defined as "any device or apparatus which is capable of transmitting, receiving, amplifying, or recording a wire or oral communication."

wealth v. Vitello, 367 Mass. 224, 231 (1975). However, § 99
B 4 exempts from the statutory prohibition the use of wire-
taps by law enforcement officials engaged in "an investiga-
tion of a designated offense" concerned with organized crime
if one party to the recorded communication gave prior au-
thorization for the wiretap.[8] For purposes of G. L. c. 272,
§ 99, the relevant definition of organized crime is "a contin-
uing conspiracy among highly organized and disciplined
groups to engage in supplying illegal goods and services."
G. L. c. 272, § 99 A. Commonwealth v. Thorpe, 384 Mass.
271, cert. denied, 454 U.S. 1147 (1981).[9] This "organized
crime" exception stems from the Legislature's finding that
organized crime poses a grave danger to ·the public welfare
and safety and that "[n]ormal investigative procedures are
not effective in the investigation of illegal acts committed by
organized crime." G. L. c. 272, § 99 A.

In Commonwealth v. Thorpe, supra, this court considered
the application of the organized crime exception of G. L.
c. 272, § 99. In order to uphold the use of evidence gathered by
wiretap under the organized crime exception, a court must
find "that the decision to intercept (a communication) was
made on the basis of a reasonable suspicion that interception
would disclose or lead to evidence of a designated offense in

---

[8]General Laws c. 272, § 99 B 7, states: "The term 'designated offense'
shall include the following offenses in connection with organized crime as
defined in the preamble: arson, assault and battery with a dangerous
weapon, extortion, bribery, burglary, embezzlement, forgery, gaming in vi-
olation of section seventeen of chapter two hundred and seventy-one of the
general laws, intimidation of a witness or juror, kidnapping, larceny, lend-
ing of money or things of value in violation of the general laws, mayhem,
murder, any offense involving the possession or sale of a narcotic or harm-
ful drug, perjury, prostitution, robbery, subornation of perjury, any viola-
tion of this section, being an accessory to any of the foregoing offenses and
conspiracy or attempt or solicitation to commit any of the foregoing
offenses."

[9]While the author of this opinion adheres to his views as to the proper
construction of the statutory definition of "organized crime" as expressed
in his dissent in Commonwealth v. Thorpe, supra at 286, he accepts, as he
must, the definition given by the court in Thorpe as stating the applicable
law in the Commonwealth.

connection with organized crime." *Id.* at 281. This "reasonable suspicion" must be based on information available to law enforcement authorities prior to the wiretap, and not based on evidence obtained through the wiretap. *Id.* at 278.

In the present case, prior to their decision to tap the Cavalieris' telephone, the North Attleborough police were confronted with the disappearance of Paul Cavalieri, a telephone call saying "you will receive instructions," and a ransom note demanding $50,000. The ransom note made repeated reference to a group of kidnappers: "*we* have your son"; "*we* want $50,000"; "*we* will be watching very closely" (emphasis added). The note also correctly informed the Cavalieris that the kidnappers were aware that the police had been called. It would be reasonable to infer from the note that a group was behind the kidnapping, one sufficiently organized to learn that the Cavalieris had communicated with the police after the first telephone call. In addition, the nature of the crime involved here lends itself to inferences of discipline and organization. See *Commonwealth* v. *Thorpe, supra* at 281.[10]

Given the facts of this case, the judge did not err as matter of law in concluding that the North Attleborough police entertained a reasonable suspicion that a wiretap would lead to evidence of a kidnapping involving organized criminal activity. In our view, any motion to suppress the recordings should

---

[10]The defendant relies on this court's decision in *Commonwealth* v. *Jarabek*, 384 Mass. 293 (1981), to support his claim that the organized crime exception would not apply to the circumstances of this case. This reliance is misplaced. In *Jarabek*, prior to the wiretap, the police knew that they were confronting a $2,000 kickback scheme involving an assistant superintendent and a school committee member. In light of these facts, this court upheld the decision of a judge who determined that the evidence showed there was no basis for concluding that the kickback scheme involved organized crime. In the present case, the police lacked such a clear picture of the players involved in the kidnapping. While there was sufficient evidence of organized activity to support a reasonable suspicion at the time of the wiretap that the kidnapping involved organized crime, more evidence to the contrary would have been necessary to make clear to the police that no organized crime connection reasonably could be suspected.

have failed. Therefore, defense counsel's failure to file such a motion did not deprive the defendant of effective assistance of counsel.

2. *Jury charge regarding time of death.* The defendant claims that the judge's instructions to the jury regarding time of death relieved the Commonwealth of its burden to prove every essential element of murder beyond a reasonable doubt. He argues that the judge's instructions created a presumption in favor of the time of death noted on the death certificate, thereby shifting to the defendant the burden of proving that death occurred at some point after the defendant's arrest on November 11, 1972.[11] We disagree.

The due process clause of the Fourteenth Amendment to the United States Constitution "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). This principle prohibits a judge from creating "evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime." *Francis* v. *Franklin*, 471 U.S. 307, 313 (1985). See *Sandstrom* v. *Montana*, 442 U.S. 510 (1979); *Commonwealth* v. *Pickles*, 393

---

[11] In his charge to the jury, the judge made the following statements as to the time of the death of the victim: "I call your attention to the death certificate which has been accepted in evidence in the case, and to that portion of it which refers to the time of death. In that respect, I call your attention to the law that says that under Section 19, of Chapter 46, a death certificate is prima facie evidence of the facts contained therein. And prima facie evidence is an expression used in the law: that is, that evidence which if unexplained or uncontradicted is deemed sufficient in the trial of a case to sustain a finding on that particular issue. So you may consider the death certificate, if you see fit, and any evidence or testimony on cross examination in regard to the doctor who signed that, to determine whether or not. But have in mind that the law gives the added weight to that, creating it as prima facie evidence. Have in mind that the defendant in the murder indictment is charged with the commission of the crime on or about the 2nd day of November, 1972. And if you find the other necessary facts which I either have adverted to or will in this charge advert to, proof of death on or about November 2nd is sufficient to sustain that portion of the indictment."

Mass. 775 (1985). When faced with a claim that a jury charge has created an impermissible presumption, this court will "consider the charge in its entirety," *Commonwealth* v. *Nieves*, 394 Mass. 355, 360 (1985), to determine whether a presumption has been created, and if one has, whether the jury instructions as a whole could have reasonably misled a jury to believe that the Commonwealth was relieved of its burden to prove each element of the crime beyond a reasonable doubt. *Commonwealth* v. *Adrey*, 397 Mass. 751, 755 (1986). *Commonwealth* v. *Moreira*, 385 Mass. 792, 796 (1982). In this regard, we note that the judge instructed the jury at length regarding the Commonwealth's burden to prove each element beyond a reasonable doubt. *Commonwealth* v. *Doucette*, 391 Mass. 443, 451 (1984). In addition, the judge provided the jury with a thorough explanation of the defendant's presumption of innocence. *Commonwealth* v. *Pickles*, *supra* at 779 n.5.

The judge in this case did not create a presumption in favor of the time of death noted on the death certificate. The judge properly charged the jury that G. L. c. 46, § 19 (1988 ed.), provides that a death certificate is prima facie evidence of the time of death, and that prima facie evidence is "that evidence which if unexplained or uncontradicted is deemed sufficient in the trial of a case to sustain a finding on that particular issue." The judge was careful to explain the limits of the effect of prima facie evidence, instructing the jury that "you may consider the death certificate, *if you see fit*, and any evidence or testimony on cross examination in regard to the doctor who signed [the death certificate]" (emphasis added). See *Commonwealth* v. *Klein*, 400 Mass. 309, 314 (1987). The judge's statement that "the law gives added weight" to the death certificate served only to remind the jury that death certificates had been given the special status of prima facie evidence, and did not create an impermissible presumption.

3. *Defense counsel's presentation at the sentencing hearing.* The defendant claims that he was denied effective assistance of counsel because his lawyer failed to present the sen-

tencing judge with the following mitigating factors: (1) The defendant's continuous employment since age twelve; (2) the defendant's active participation in fundraising for worthy causes; (3) the defendant's involvement in the coaching and coordination of youth sports in Attleboro; and (4) the defendant's ongoing engagement in athletic activities. The defendant also notes that defense counsel did not call any of the defendant's family or coworkers to testify on his behalf. Finally, the defendant points to defense counsel's failure to request concurrent sentences. We conclude that the totality of the circumstances at the sentencing hearing demonstrates that the defendant was denied the effective assistance of counsel at this stage of the proceeding.

"[S]entencing is a critical stage of the criminal proceeding at which [the defendant] is entitled to the effective assistance of counsel." *Gardner* v. *Florida*, 430 U.S. 349, 358 (1977). See *Osborne* v. *Commonwealth*, 378 Mass. 104, 113 (1979). At the time of sentencing, judgment has already been rendered; what is at stake at the hearing is the determination as to what consequence the judgment will hold for the defendant.

A sentencing judge is given great discretion in determining a proper sentence. *Commonwealth* v. *Knight*, 392 Mass. 192 (1984). He has the power to determine the length of the defendant's sentence, so long as he does not violate statutory limits. *Commonwealth* v. *Burke*, 392 Mass. 688 (1984). The judge can order that multiple sentences be served concurrently, rather than consecutively, thereby effectively shortening the defendant's term of punishment. G. L. c. 279, § 8 (1988 ed.). He may consider a wide range of factors in mitigation of the defendant's guilt, including the defendant's behavior, family life, and employment. *Commonwealth* v. *Celeste*, 358 Mass. 307 (1970). Indeed, a sentencing judge is encouraged to take these and other factors into account by affording the defendant or defense counsel "an opportunity to speak on behalf of the defendant and to present any information in mitigation of punishment." Mass. R. Crim. P. 28 (b), 378 Mass. 898 (1979). The sentencing hearing is not a

static proceeding in which the result is predictable. It is a crucial stage in the system of justice at which the skill and performance of defense counsel can significantly affect the interests of the defendant.

In the present case, defense counsel's statement at the sentencing hearing contained no reference to the defendant's employment history, his charitable activities, or his civic contributions. No witnesses were brought forward to speak on his behalf. Most disturbingly, defense counsel did not request the imposition of concurrent sentences. *Osborne* v. *Commonwealth, supra.* In light of the serious sentences facing his client, defense counsel's performance at the sentencing hearing fell "measurably below that which might be expected of an ordinary fallible lawyer." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). We cannot say that this failure did not affect the sentences imposed. As a result, this case must be remanded for resentencing. *Osborne, supra* at 116.

Based on our review of the entire record, we discern no error of law in the judge's decision to deny a new trial. The order of the Superior Court denying the defendant's motion for a new trial is to be affirmed. As to the claim of ineffective assistance of counsel in the sentencing process, for the reasons stated, we vacate the sentences imposed and remand the case to the Superior Court for new sentencing procedures.

*So ordered.*