COMMONWEALTH *vs.* MOUSSA ABDUL-KAREEM.

No. 99-P-1426.

Essex. May 21, 2001. - September 24, 2002.

Present: ARMSTRONG, C.J., GRASSO, & COWIN, JJ.

*Search and Seizure,* Electronic surveillance. *Eavesdropping. Conspiracy. Mayhem. Assault and Battery by Means of a Dangerous Weapon. Practice, Criminal,* Duplicative convictions.

In the circumstances of law enforcement officers' interception of a conversation between the defendant and a police informer, the judge at the defendant's trial of indictments for conspiracy to commit mayhem and conspiracy to commit an assault and battery by means of a dangerous weapon properly received in evidence and played for the jury the tape recording of the conversation, where the transmission and recording of the meeting were in conformity with the one-party consent exception of G. L. c. 272, § 99 B 4, to the general ban on surreptitious recording. [79-80]

At a criminal trial, the evidence was sufficient to convict the defendant of conspiracies to commit mayhem and to commit assault and battery by means of a dangerous weapon in light of abundant evidence corroborating statements by the defendant to a police informer that were recorded by law enforcement officers [80-82]; however, the conviction of conspiracy to commit assault and battery by means of a dangerous weapon, being duplicative of the mayhem conspiracy, was vacated [82].

INDICTMENTS found and returned in the Superior Court Department on November 13, 1996.

A pretrial motion to suppress evidence was heard by *Regina L. Quinlan,* J., and the cases were tried before *Robert A. Barton,* J.

*Alan N. Kaplan* for the defendant.

*Catherine L. Semel,* Assistant District Attorney, for the Commonwealth.

ARMSTRONG, C.J. The defendant appeals from convictions of conspiracy to commit mayhem and conspiracy to commit assault and battery by means of a dangerous weapon. The evidence

favorable to the Commonwealth at trial showed that the defendant engaged one Hathaway to murder George Markos and shoot Konstantinos Travayiakis ("Kostos") in the knees. The defendant and Hathaway, who were prior acquaintances, had three meetings. At the first, the defendant told Hathaway he had a job for him, that it involved "whacking" Markos and Kostos, and that Hathaway should call the defendant's pager number. At the second, the defendant picked Hathaway up in Lynn, and the two drove north to Marblehead to a restaurant owned by Kostos. Hathaway entered the restaurant for a short time to familiarize himself with its layout and with Kostos's appearance. At the third, the two drove again toward Marblehead but were intercepted by police before reaching the vicinity of the restaurant.

Hathaway was a police informer. On the day after the first meeting, he reported to the police what was afoot, and the police observed the second meeting, following the defendant's car to Marblehead at a safe distance. By the time of the third meeting, the police had obtained a warrant for electronic surveillance[1] and overheard and recorded the conversation between the defendant and Hathaway. The tape of the conversation was played for the jury.

The defendant argues three issues on appeal.

1. *Validity of the wiretap.* The electronic surveillance in this case finds justification not by a warrant under the provisions of G. L. c. 272, § 99 F-M (the police applied under the provisions of G. L. c. 276), but rather under the one-party consent exception of G. L. c. 272, § 99 B 4. See *Commonwealth* v. *Zuluaga*, 43 Mass. App. Ct. 629, 633-634 (1997). Under that exception, a tap consented to by one party to a conversation (here, Hathaway) will be upheld if police are investigating a "designated offense" occurring in connection with "organized crime." See *Commonwealth* v. *Thorpe*, 384 Mass. 271, 276 (1981), cert. denied, 454 U.S. 1147 (1982). "Designated offense[s]" are enumerated in G. L. c. 272, § 99 B 7; they include assault and

---

[1]As the interception did not take place in a private residence, it is doubtful that a warrant was required under *Commonwealth* v. *Blood*, 400 Mass. 61 (1987). See *Commonwealth* v. *Remedor*, 52 Mass. App. Ct. 694, 698 n.3 (2001), and cases cited.

battery with a dangerous weapon, murder, and solicitation to commit either of the two. The connection with organized crime was adequately suggested by several aspects of Hathaway's description of the proposition put to him by the defendant, most particularly that the defendant did not have any dealings with or even know Kostos but had been hired to kill him by someone else who would be paying for the hit[2]; that the defendant would supply Hathaway with a "clean" .38 caliber handgun with a silencer, and with a car and an airline ticket to facilitate his getaway; and that the defendant himself would drive the getaway car but had a provable alibi. These factors, suggesting that the defendant was not acting alone but was drawing on other resources, "[lend themselves] to inferences of discipline and organization," *Commonwealth* v. *Lykus*, 406 Mass. 135, 142 (1989), and thus support the required inference. Compare *Commonwealth* v. *Thorpe*, 384 Mass. at 281; *Commonwealth* v. *Lykus*, 406 Mass. at 141-142; *Commonwealth* v. *D'Amour*, 428 Mass. 725, 736-737 (1999).

Because the transmission and recording of the third meeting between the defendant and Hathaway were in conformity with the one-party consent exception to the general ban on surreptitious recording, the tape of the conversation was properly received in evidence and played for the jury.

2. *Motion for required findings.* The trial judge, agreeing with the defendant's position that a conspiracy was not shown if the only two participants in the plan were the defendant and Hathaway,[3] ordered entry of a finding of not guilty on the indictment for conspiracy to murder Markos. (The evidence was that the Markos "hit" was a "freebie" for the defendant, that the outside source was only paying for the Kostos hit.) Guilty verdicts were thus returned only on the two conspiracy indictments relating to Kostos.

---

[2]It was not until the third and final meeting that the defendant told Hathaway that he was not to kill Kostos but only to shoot him in the knees.

[3]On the "bilateral theory of conspiracy," described in *Commonwealth* v. *Themelis*, 22 Mass. App. Ct. 754, 757-760 (1986), Hathaway could not be found to be a coconspirator because he did not intend to participate in the plan but rather to feign participation and expose it. In the *Themelis* appeal, we were not required to decide whether Massachusetts subscribes to the bilateral theory, and we are similarly not required to decide the question in this appeal.

On appeal the defendant makes an argument that was not made to the trial judge: namely, that the two indictments that *were* submitted to the jury each lacked supporting evidence sufficient to convict because of the corroboration rule adopted in *Commonwealth* v. *Forde*, 392 Mass. 453, 457-458 (1984). The rule relates to confessions and admissions; its purpose is to "preclude[] the possibility of conviction of [a] crime based solely on statements made by a person suffering a mental or emotional disturbance or some other aberration." *Id.* at 457. The rule requires "some evidence, besides the confession . . . that the crime was real and not imaginary." *Commonwealth* v. *Manning*, 41 Mass. App. Ct. 18, 21 (1996), quoting from *Commonwealth* v. *Forde*, 392 Mass. at 458.

It is doubtful that the corroboration rule applies to statements made in active furtherance of a criminal plan, as contrasted with statements admitting or suggesting complicity in a completed crime. Even if applicable, the central purpose of the rule is met here. In addition to Hathaway's testimony, abundantly corroborated by the tape recording,[4] we have the testimony of the officers who monitored the taping; the efforts by the defendant to purchase a gun and silencer from another undercover officer; the surveillance trips to Marblehead; and the antagonistic history between the defendant and Markos, contrasted with the fact that the defendant and Kostos were total strangers. Even the defendant's sketchy description of his employer — a fat man having connections to Kostos that involved the "Bank of Greece" — seemed to have some historical grounding in a dispute between major shareholders of a software company that was largely financed by the International Bank of Greece. The dispute, according to Kostos, culminated in a $5 million lawsuit by two shareholders, one of whom was described as weighing between 400 and 500 pounds, against the bank, Kostos, and the bank's other major shareholders. The dispute involved investigations by both State and Federal law enforcement authorities — Kostos testified he had been interrogated twice by Federal

---

[4]The transcript of the tape recording that was prepared by the Commonwealth is not part of the record, but the tape itself was put in evidence as an exhibit. We have listened to the tape, and it bears out in pertinent respects the accuracy of the transcript prepared by the Commonwealth.

Bureau of Investigation agents and twice by agents of a district attorney's office; but, beyond confirming in very general terms the reality of a dispute between the fat man and Kostos and the bank, that story was left hanging as the testimony moved back to the story of the defendant's hapless efforts to consummate the plot through a police informer and an undercover officer working independently.

The judgment on the charge of conspiracy to commit mayhem is affirmed. The judgment on the charge of conspiracy to commit assault and battery by means of a dangerous weapon, being duplicative of the mayhem conspiracy, is vacated,[5] the verdict is set aside, and that indictment is dismissed.

*So ordered.*

---

[5]The Commonwealth has conceded that the battery conspiracy is duplicative of the mayhem conspiracy, which was charged under the second branch of the mayhem statute, G. L. c. 265, § 14. The reasons are explained in *Commonwealth* v. *Martin*, 425 Mass. 718, 721-722 (1997). See also *Commonwealth* v. *Simpson*, 428 Mass. 646, 655 (1999).