NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-973

COMMONWEALTH

vs.

HECTOR RODRIGUEZ (and a consolidated case[1]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After their motions to suppress evidence were denied by a judge of the Superior Court, the defendants Hector Rodriguez (Rodriguez) and Luis Acevedo (Acevedo) both entered conditional guilty pleas, preserving their right to appeal the denial of their motions to suppress pursuant to Mass. R. Crim. P. 12 (b) (6), as appearing in 482 Mass. 1501 (2019). The defendants raise the same issues and we consolidated their appeals for appellate review.

Background. On December 4, 2018, Officer Robert J. Patruno of the Springfield police department applied for and received a warrant to search "1251 Bay St., Springfield, Ma" (the property). Because the sole issues on appeal concern the

_____

[1] Commonwealth vs. Luis Acevedo.

sufficiency of the affidavit in support of the search warrant, we recite in detail the facts it sets forth while noting information it omits.  See Commonwealth v. Tapia, 463 Mass. 721, 722 (2012).

Several years prior to this application for a search warrant, the property and Acevedo were the subject of an investigation conducted by the Drug Enforcement Administration into a large scale heroin and cocaine operation.  At the time, law enforcement agents believed the property was being used as a safe house for Acevedo and the drug operation.  The investigation resulted in the arrest of the primary target (not Acevedo) and the seizure of $2 million, at which time that investigation came to an end.

As described in Officer Patruno's application affidavit, in September of 2017 Detective Sinely Vegerano, acting in an undercover capacity, contacted an individual that went by the name "Eto" to purchase 100 bags of heroin, known as "a pack."[2] Eto and Detective Vegerano drove together to several locations before stopping at a house in Holyoke.  Eto entered and exited the house in Holyoke quickly, during which time Acevedo appeared at the house.  Acevedo appeared upset at Eto for bringing the buyer (undercover Detective Vegerano) to the house in Holyoke.

---

[2] Eto was later identified as Victor Acevedo.

2

Detective Vegerano made no mention of Acevedo's appearance at the house in Holyoke in his 2017 report (detailing that event).

At the time he applied for the search warrant, Officer Patruno had been a police officer for twenty three years, eleven of which were in the narcotics unit, and he had attended numerous specialized trainings and courses related to surveillance techniques and the identification, detection, and distribution of controlled substances.  Beginning in October of 2018,[3] Officer Patruno and members of his department began investigating the defendants and the property again, this time under the belief it was being used as a "stash house."[4]  Acevedo and Rodriguez had a criminal history that dated back at least to 2004 when they were arrested for narcotics offenses.  In that case, the Commonwealth entered a nolle prosequi with respect to Acevedo's charges and Rodriguez was sentenced to a state prison sentence of five to six years.  Officer Patruno learned from another member of law enforcement that Rodriguez pleaded guilty in order to protect Acevedo, who was a target of the 2004 investigation.  The affidavit fails to mention that in April of

--------

[3] Officer Patruno stated that the investigation was "[o]ver the last two months."

[4] Officer Patruno defined a "stash house" as "a street term for a place where illegal narcotics and profits from the sale of illegal narcotics are kept."

3

2018 the case against Rodriguez was dismissed with prejudice and his sentence was vacated.[5]

The listed property owner had died in 2016, and the home was shuttered and appeared unoccupied. Rodriguez was seen several times parking a car near the property, sometimes overnight, and was seen entering and exiting the property. Acevedo also was seen arriving at the property and parking a car in the driveway. Officers observed both Acevedo and Rodriguez perform counter surveillance driving maneuvers on separate occasions after leaving the property, including making an abrupt U-turn, pulling into a vacant parking lot and observing passing traffic, and taking circular routes. While surveilling the property, officers observed no one else going to or leaving the property and saw "little to no activity outside of Rodriguez and Acevedo."

Officers also conducted two "trash pulls"[6] of trash cans left directly outside the property in November and December of 2018. The night before the November "trash pull," and throughout the course of their investigation, Officer Patruno

_____

[5] Rodriguez's conviction was vacated and his case dismissed with prejudice as part of the resolution of the Sonia Farak misconduct proceedings. See Committee for Pub. Counsel Servs. v. Attorney Gen., 480 Mass. 700 (2018).

[6] A "trash pull" is where police collect and inspect the contents of a trash can left on the curb to be collected, in this case by the Springfield Department of Public Works. The constitutionality of these "trash pulls" is not at issue.

observed trash bins[7] next to the garage of the property. The next morning, he pulled trash from those same bins that were then located on the public road at the end of the driveway of the property. After the trash was brought to a location where he could inspect it, Officer Patruno discovered two boxes that he believed were indicative of a large heroin operation being conducted at the property. Based on Officer Patruno's training and experience, these boxes "normally contain 50,000 wax packets for heroin packaging" and were identifiable by a marking on the outside of the box: "the 'Playboy'[] logo in blue ink." One of the two boxes had a sample wax paper "Playboy" packet taped to the outside of the box, commonly used to package drugs. Inside one of the boxes was a sandwich bag box containing "blowouts," a type of refuse Officer Patruno described as being consistent with refuse generated by the process of packaging drugs for distribution.

During the morning of the December "trash pull," Officer Patruno observed Rodriguez bring the trash bins to the public road at the end of the driveway of the property. Once Rodriguez left the area, Officer Patruno again pulled the trash and brought it to a location where he could inspect it. Officer Patruno recovered six plastic seal wraps, which he described as

---

[7] Officer Patruno sometimes refers to a single bin and sometimes refers to multiple bins. Nothing turns on this inconsistency.

5

consistent with the packaging of a kilogram of illegal drugs. He also discovered food containers, a milk carton, a cereal box, and the remains of cigar tobacco removed from a cigar wrap. The food containers "were fresh refuse."

A state trooper and his canine Cairo, trained in the detection of narcotics, assisted with the investigation of the evidence from the December "trash pull." Cairo was NESPAC[8] certified in the detection of heroin, methamphetamine, and cocaine. Cairo was instructed to inspect four boxes, each of which were put in a different location inside a garage and only one of which contained the objects obtained from the "trash pull." After inspecting each box, Cairo "alerted" only to the box containing the objects obtained from the "trash pull."

The defendants each filed a motion to suppress the evidence obtained as a result of the search conducted at the property, arguing that the search warrant failed to establish probable cause to establish that evidence of a crime would be found inside the property. Both motions also contained a request for a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), regarding certain information they claimed was intentionally withheld from the affidavit. After hearing arguments, these motions were both denied.

---

[8] As discussed below, this acronym is not further defined by the affidavit.

6

Discussion.  The defendants make the same two arguments: first, that the affidavit lacked probable cause that evidence of a drug operation would be found at the property; and, second, that they were entitled to a Franks hearing regarding Officer Patruno's (i) failure to include in his affidavit that Rodriguez's 2004 criminal case had been dismissed with prejudice and his sentence vacated; and (ii) assertion that Acevedo had appeared on the scene of the 2017 controlled buy.  We address each argument in turn.

1.  Probable Cause.  The defendants first argue that the search of the property was a violation of the Fourth and Fourteenth Amendments to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights because the search warrant was not supported by probable cause.  "When reviewing the sufficiency of a warrant application, our 'inquiry begins and ends with the "four corners of the affidavit" that supported it.'"  Commonwealth v. Hayes, 102 Mass. App. Ct. 455, 461 (2023), quoting Commonwealth v. Escalera, 462 Mass. 636, 638 (2012).  "[T]he affidavit should be read as a whole, not parsed, severed, and subjected to hypercritical analysis."  Commonwealth v. Blake, 413 Mass. 823, 827 (1992).  When determining whether the affidavit supported a finding of probable cause, "[w]e give considerable deference to the magistrate's determination."  Commonwealth v. Andre-Fields, 98 Mass. App. Ct. 475, 486 (2020),

7

citing Commonwealth v. Harmon, 63 Mass. App. Ct. 456, 460 (2005).

In order for a search warrant to be supported by probable cause, the facts in the accompanying affidavit must provide a "substantial basis to conclude that the items sought are related to the criminal activity under investigation, and that they reasonably may be expected to be located in the place to be searched at the time the search warrant issues" (quotation omitted). Commonwealth v. Snow, 486 Mass. 582, 586 (2021). "The nexus between the items to be seized and the place to be searched need not be based on direct observation and may be grounded in the type of crime, the nature of the . . . items [sought], the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would be likely to [keep the items sought]" (quotations and citations omitted). Commonwealth v. Fernandes, 485 Mass. 172, 183-184 (2020), cert. denied, 141 S. Ct. 1111 (2021). An affidavit need only provide a "quantum of evidence from which the magistrate can conclude, applying common experience and reasonable inferences, that items relevant to apprehension or conviction are reasonably likely to be found at the location." Commonwealth v. Murphy, 95 Mass. App. Ct. 504, 509 (2019) ("The probable cause standard does not require a showing that evidence more likely than not will be found"). The information in the

8

affidavit must be particularized, such that it would permit a reasonable inference that the defendants likely kept the evidence sought inside the property to be searched.  Escalera, 462 Mass. at 643.

Here, putting aside the defendants' criminal histories for later discussion, the affidavit contained information regarding two "trash pulls" at the property which resulted in the seizure of two empty boxes that ordinarily contain 50,000 wax packets for packaging heroin;[9] a positive drug identification by a dog trained in the detection of narcotics of items recovered from one of the two "trash pulls"; observation of Rodriguez carrying out the trash bin that contained evidence of drug distribution; observations of both defendants frequenting the property whose owner had died two years earlier; counter-surveillance techniques used by both defendants when leaving the property; and a lack of observed activity at the property other than the defendants' comings and goings.  Reviewing these facts and reasonable inferences drawn from those facts, see Commonwealth v. Augustine, 472 Mass. 448, 455-456 (2015), we conclude that the affidavit established probable cause.  The affidavit contained enough particularized information to permit a

---

[9] Police "officers need not rule out a suspect's innocent explanation for suspicious facts" (quotation omitted). Commonwealth v. Guastucci, 486 Mass. 22, 26 (2020).

9

reasonable inference that physical evidence of a drug operation existed inside the property. See Andre-Fields, 98 Mass. App. Ct. at 484 ("Once it was established that [the defendant] was operating a drug business that included [the property], little, if anything more, needed to be added in the affidavit to justify searching for records, ledgers, or proceeds" [quotation omitted]).

The defendants contend that the positive alert by the drug sniffing dog Cairo should not have weighed in favor of a finding of probable cause because the affidavit does not effectively establish his training and reliability. We disagree. Although the affidavit does not define the NESPAC certification Cairo received, it clearly states that Cairo was trained in the detection of heroin, methamphetamine, and cocaine and that the training consisted of eight forty-hour weeks. See Commonwealth v. Judge, 100 Mass. App. Ct. 817, 825-826 (2022) (reliability of dog trained in detection of narcotics can be established in the absence of formal certification if dog has recently and successfully completed training). Additionally, the affidavit described the items that were presented to Cairo and how he alerted only to the items from the property. This level of detail regarding Cairo's training and the method that the canine officer employed to have Cairo examine the items is sufficiently

10

detailed and its consideration in a determination of probable cause was appropriate.

The defendants also argue that there is not probable cause where, as here, there was not a controlled buy at the property or other direct observations of drug activity or transactions at the property. They argue that Officer Patruno's description that the property was vacant (other than the occasional presence of Acevedo and Rodriguez) is inconsistent with a potential "stash house." In essence, they argue that the lack of police observation of criminal activity is determinative. We disagree: a "trash pull" coupled with other evidence not rising to the level of direct observation of criminal activity is sufficient to establish probable cause. See Commonwealth v. Matias, 440 Mass. 787, 792-793 (2004) (trash pull in connection with "a tip from an informant several months before [the] search" sufficient to support probable cause); Commonwealth v. Lavin, 101 Mass. App. Ct. 278, 297-298 (2022), S.C., Commonwealth v. Desiderio, 491 Mass. 809 (2023) (admission by defendant that "he suffered from a prescription pill addiction," "drug paraphernalia" recovered from "trash pull," and prior overdose by defendant established probable cause).

Here, in the first "trash pull" officers found two boxes identifiable by "the 'Playboy'[] logo in blue ink" that normally contain 50,000 wax packets for heroin packaging; one of those

boxes had a sample wax paper "Playboy" packet affixed, and the other contained refuse generated by the process of packaging drugs for distribution.  In the second "trash pull" six plastic seal wraps consistent with the packaging of a kilogram of illegal drugs was found.  And, as noted, a dog trained in the detection of narcotics alerted to the items.  In addition, Rodriguez was observed bringing the trash bin to the curb.  The "fresh refuse" contained in the December "trash pull" further established that the contents of the trash, including the plastic seal wraps, had been recently discarded.  Given the evidence produced from the "trash pulls" in connection with the two defendants' routine visits to the property whose listed owner was deceased, and the defendants' counter surveillance driving maneuvers when leaving the property, there was probable cause to believe that evidence of a crime would be discovered at the property even without a controlled buy or other direct observations of drug activity or transactions at the property.

2.  Franks hearing.  The defendants next argue that they were entitled to a Franks hearing regarding Officer Patruno's failure to disclose in his affidavit that Rodriguez's 2004 case had been dismissed with prejudice with the sentence vacated and his assertion that Acevedo appeared at the scene of the 2017 controlled buy.  "The defendant[s are] entitled to a Franks hearing only if [they] make[] two 'substantial preliminary

12

showing[s].'"  Commonwealth v. Andre, 484 Mass. 403, 407 (2020),
quoting Commonwealth v. Long, 454 Mass. 542, 552 (2009).  First,
a defendant must make "a substantial preliminary showing that a
false statement knowingly and intentionally, or with reckless
disregard for the truth, was included by the affiant in the
warrant affidavit."  Franks, 438 U.S. at 155-156.
"Intentionally or recklessly omitted material may also form the
basis for mounting a challenge under" Franks.  Long, 454 Mass.
at 552.  Second, the defendant must show that "the allegedly
false statement is necessary to the finding of probable cause,"
or "that the inclusion of the omitted information would have
negated the magistrate's probable cause finding" (quotation
omitted).  Andre, 484 Mass. at 408.  We review to determine
whether the judge abused her discretion in denying the
defendants an opportunity to be heard at a Franks hearing.
Commonwealth v. Perez, 87 Mass. App. Ct. 278, 285 (2015).

We need not decide whether the defendants have shown that
Officer Patruno intentionally or recklessly omitted material
information from or made materially false allegations in the
affidavit because the defendants have failed to show that the
inclusion of information regarding the dismissal of Rodriguez's
conviction, or excluding the assertion that Acevedo appeared at
the scene of the 2017 controlled buy, would have negated the
magistrate's probable cause finding.  As discussed previously,

13

the affidavit, without any mention of the defendants' criminal history, would have contained enough information to support a finding of probable cause. We agree with the Superior Court judge that the information relating to the 2004 conviction was not particularly helpful in the probable cause calculus as it was from fourteen years ago and was outdated. Rather, it served as background information connecting the two defendants together, an inference that could also be reasonably made given the observations that only the defendants repeatedly visited the same isolated property. Also serving as little more than background information was the assertion that more than one year earlier Acevedo "arrived" during but did not participate in a controlled buy taking place at a different location. Without the 2004 criminal history information or the allegations pertaining to the 2017 controlled buy, the search warrant still was based on probable cause. Accordingly, the defendants have failed to show that including this information would have negated the magistrate's probable cause finding.

Conclusion. Because the affidavit supported a finding of probable cause and the defendants have failed to show that information included in or omitted from Officer Patruno's

affidavit would have negated the magistrate's probable cause finding, we affirm the orders denying the motions to suppress.

Orders denying motions to
suppress affirmed.

By the Court (Vuono, Meade &
Walsh, JJ.[10]),

*Joseph F. Stanton*

Clerk

Entered:  December 6, 2023.

---

[10] The panelists are listed in order of seniority.